UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES V. REED,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　　　Defendants. | CASE NO. C16-5993 BHS<br><br>ORDER DECLINING REPORT AND RECOMMENDATION, RETURNING FOR FURTHER PROCEEDINGS, AND APPOINTING COUNSEL |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable David W. Christel, United States Magistrate Judge (Dkt. 57), and Plaintiff's objections to the R&R (Dkt. 60).

On September 25, 2017, Defendants moved for summary judgment. Dkt. 40. On December 21, 2017, Plaintiff responded. Dkt. 53. On December 22, 2017, Defendants replied. Dkt. 54. On January 30, 2018, Judge Christel entered the R&R wherein he recommended granting Defendants' motion for summary judgment on the basis that there were no genuine disputes of material fact and Plaintiff had failed to show that Defendants violated his constitutional rights. Dkt. 57. On February 26, 2018, Plaintiff filed objections to the R&R. Dkt. 60. On March 15, 2018, Defendants responded to Plaintiff's objections.

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

Plaintiff raises the following objections to the R&R: (1) Plaintiff objects that he did not receive Defendants' reply brief until December 28, 2017, although it was due December 22, 2017, Dkt. 60 at 2; (2) Plaintiff objects that the R&R should give deference to his pleadings over those of the Defendants because he is acting pro se, *id.*; (3) Plaintiff objects to the R&R's purported finding that *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011), is "the only court ruling on DOCs HCV Protocol," *id.* at 5, and (4) Plaintiff objects to the R&R's finding that there are no genuine disputes of material fact, *id.* at 3. Plaintiff also reiterates his underlying argument in opposing summary judgment that Defendants knew he suffered from HCV yet deliberately delayed effective treatment for years until his liver damage had escalated from moderate fibrosis in 2012 (with a F-2 METAVIR score) to cirrhosis in 2017 (with a F-4 METAVIR score).[1] *See* Dkt. 60. He argues that as a result of this delay, he was caused to suffer "unnecessary wanton of [sic] pain, associate with excruciating headaches, Barretts Esophagitis [sic], muscle spasms, skin conditions, 80% loss of energy, fatigue, dizziness, functional limitations, mood swings, forgetfulness affecting ability to concentrate . . . " and the risk of other severe health complications.

---

[1] Stages of liver fibrosis or scarring are as follows: F-0 denotes no scarring, F-1 denotes mild scarring, F-2 denotes moderate scarring, F-3 denotes severe scarring, and F-4 denotes cirrhosis or very severe scarring. Dkt. 43 at 5–6.

The Court finds that Plaintiff's first three objections do not provide a legitimate basis for declining the R&R. Plaintiff's objection regarding the timeliness of Defendants' reply brief lacks merit, as the brief was timely filed with the Court. Although Plaintiff did not receive the brief until six days later, this did not deprive him of the opportunity to file a surreply. Parties are not permitted to file a surreply unless they seek to strike material from a reply, and Plaintiff has not articulated how any material was improperly presented in Defendants' reply or supporting materials. Moreover, the report and recommendation was not issued until over 30 days later, meaning that Plaintiff had more than adequate time to file a surreply if he indeed thought it necessary.

Plaintiff's objection regarding the purported deference extended to Defendants' pleadings also lacks merit. While Plaintiff's argument is vague, it appears that he objects to the R&R's failure to give an added measure of deference to his pleadings over the arguments of Defendants. This argument is predicated on looser pleading standards for pro se complaints, but the motion before the Court is not a motion to dismiss. Instead, as a motion for summary judgment, the standards cited by Plaintiff are inapplicable—for instance, courts are not required to give a plaintiff's statements the benefit of the doubt when the allegations are not supported by the record and no reasonable juror could believe the allegations in light of controverting evidence. Besides, Plaintiff has failed to specify what assertions of the Defendants were purportedly afforded undue deference.

Additionally, the Court rejects Plaintiff's argument regarding the R&R's characterization of *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011). Plaintiff argues that the R&R described *Roe v. Elyea* as "the only court ruling on DOCs HCV Protocol." Dkt. 60

at 5. In fact, the R&R described the Seventh Circuit in *Roe v. Elyea* as the "only court to have addressed the issue of prioritizing the sickest patients in treatment policies." Dkt. 57 at 5. Regardless, there have been other unpublished cases to indirectly address the validity of prioritizing limited resources in HCV treatment for the sickest inmates. *Abu-Jamal v. Wetzel*, 3:16-CV-2000, 2017 WL 34700, at *15 (M.D. Pa. Jan. 3, 2017) ("Simply prioritizing treatment so that those in the greatest need are treated first likely would not constitute a constitutional violation."). But the mere fact that other cases may have addressed this issue (and came to the same result) is not a basis for declining the R&R. The Court does not need to cite every possible relevant case in its orders so long as it applies the appropriate legal standards to arrive at the proper result.

Nonetheless, the Court agrees with Plaintiff's argument that Defendants have failed to carry their initial burden in establishing the absence of a genuine dispute of material fact. The R&R's analysis is predicated on a theory that the Department of Correction's ("DOC") medical care policy is constitutional because it "balances the effective treatment of prisoners with the financial concerns of the DOC." Dkt. 57 at 5. However, the Ninth Circuit has consistently "maintained that 'faced with a conflict between financial concerns and preventable human suffering, the court has little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.'" *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)) (alterations omitted). This is not to say that the R&R made an inappropriate statement of the law in regards to Plaintiff's § 1983 claims for damages. If prison officials do all that they could to deliver adequate HCV

treatment in light of real financial limitations, they may not be liable for any damages that may have arisen from delays in treating Plaintiff's HCV. *See LaMarca v. Turner*, 995 F.2d 1526, 1536–39, 1542 (11th Cir. 1993) (prison official wouldn't be personally liable if he did everything he could, but prisoner could get prospective relief against official in his official capacity). But this is only because an official's "constraints" and "competing tensions" are "important to the resolution of whether the officials had the requisite subjective intent" to constitute deliberate indifference. *Clement v. Gomez*, 298 F.3d 898, 905 n.4 (9th Cir. 2002). The standard of deliberate indifference still demands a careful analysis of an inmate's medical needs and the concrete constraints that actually prevented effective treatment.

In their motion for summary judgment, Defendants have failed to establish that Plaintiff was denied effective treatment because it was not possible to provide it. Defendants merely cite to the expensive nature of the procedure while generally stating that "there are a limited number of patients who can be treated for HCV at any one time." While these statements are believable, Defendants fail to provide evidence actually establishing that, for the duration of the time they were aware Plaintiff had F-2 fibrosis, there were insufficient resources to provide Plaintiff with treatment due to higher priority inmates with more advanced liver damage or other illnesses. Instead, the record suggests that Plaintiff was denied effective treatment because his liver biopsy revealed that his fibrosis score was F-2 rather than F-3 or F-4. *See* Dkt. 42 at 3 ("His fibrosis score was F2. Based on his fibrosis score at that time [June 11, 2014], he did not qualify for treatment with HCV medications under DOC protocols . . . ."). The Hepatitis C Treatment Care

Review Committee's ("CRC") decision suggests that Plaintiff was categorically denied effective treatment because his F-2 score was not sufficiently severe to warrant treatment. Specifically, the CRC stated:

> Pt does not meet criteria for tx per protocol. . . . PMHx of arthritis, Barrett's esophagus (being monitored) and migraines. He just had a liver biopsy last year. His APRI is relatively low and has not significantly changed over the time period since biopsy to suspect that there has been unusually rapid progression of his fibrosis. . . . The patient should be reassured that he only has F2 fibrosis after ~35 years of the disease. Given he is 61 yo, there is a high likelihood he will die of an alternative process. At this point in time, he does not meet DOC criteria for Hep C treatment given his low-moderate fibrosis and no co-morbidity putting him in a high risk category.

Dkt. 42-1 at 67. In other words, notwithstanding that Defendants knew Plaintiff had been suffering symptoms for years and knew both the cause of the symptoms and the course of treatment required to effectively treat HCV, Defendants intentionally delayed such treatment until Plaintiff's liver damage grew so severe that treatment could no longer be delayed without risk of dangerous complications and death.

This is further reflected by the fact that DOC's implementation of policy 670.000 categorically excludes providing treatment to inmates suffering from HCV at the F-2 stage of liver scarring. The DOC's Hepatitis C Treatment Eligibility Evaluation provides the unequivocal instruction that treatment will not be provided for those suffering with F-0–F-2 METAVIR scores. It is formatted as follows:

> **16. INTERPRET BIOPSY RESULTS** (full review of report and discussion with MD/DO required)
> Metavir Score: _____ (fibrosis)     Date of biopsy: _____
> ☐ Metavir score is 0-2: Treatment for hepatitis C not currently necessary. Document education and schedule follow up at least annually to clinically evaluate and determine APRI score. Rescreen for treatment annually and biopsy every 5 years or as appropriate (may need to be more frequent if co-infected with HIV).
> ☐ Metavir score ≥ 3: Proceed to step 17.

Dkt. 43-1 at 17. This plainly indicates that effective treatment for Hepatitis C is to be categorically denied under applicable DOC policy to any inmates whose liver damage has not already progressed to severe or very severe scarring that denotes an imminent risk of irreparable harm.

Furthermore, even if Plaintiff can successfully show that budgetary constraints demanded that treatment for Plaintiff be delayed until his liver damage grew severe, there remain concerns as to whether the monitoring Plaintiff received under the triage protocol fell below the standard of medical treatment demanded by the Eighth Amendment. The DOC's policy and the CRC's decision to delay treatment indicate that Plaintiff was to be monitored annually to determine when his symptoms and METAVIR score grew so severe as to warrant immediate treatment. However, while Plaintiff was rejected by the CRC for treatment as recently as 2016, his METAVIR score was allowed to progress from F-2 to F-4 without discovery of his eligibility for treatment under DOC policy when his liver damage reached the severity of an F-3 score. As a result of this intentional delay in treatment, Plaintiff now suffers from cirrhosis. In light of this, Defendants have failed to establish that there is no genuine dispute over whether the delay of HCV treatment and subsequent monitoring of Plaintiff's liver damage was carried out in an inadequate manner as to constitute deliberate indifference to Plaintiff's medical needs. In fact, even though DOC policy demanded that Plaintiff be evaluated and rescreened annually, *see* Dkt. 43-1 at 17, the record suggests that this monitoring protocol may not have been followed. From the Court's review of the applicable medical records, it appears that Plaintiff may not have received any annual evaluation between his HCV evaluation on

June 5, 2015, and his subsequent Fibroscan on June 20, 2017. *See* Dkt. 42 at 3–5. While Defendants might be able to show that Plaintiff was appropriately monitored by further discussion of care Plaintiff received, such an analysis was not set out in their motion for summary judgment. *See* Dkt. 40 at 7, 18–19.

Finally, the Court notes that declining to adopt the R&R does not run afoul of the Seventh Circuit's comments in *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011). Defendants have heavily emphasized the Seventh Circuit's statement that "[i]f IDOC's financial constraints limit the care available, Dr. Elyea might well be justified in triaging the cases and deciding eligibility for treatment . . . [if] the decision about who should have priority for care [is] itself . . . based on medical judgment." *Elyea*, 631 F.3d at 863 n.17. However, that statement was offered in a footnote because the issue of balancing financial constraints with adequate medical care was not actually before the panel. In *Elyea*, the Seventh Circuit was faced with an Illinois Department of Corrections policy of categorically denying HCV treatment to any inmate with less than two years left on his sentence. The Seventh Circuit determined that such a categorical rule was unconstitutional as it resulted in the denial of treatment without any medical decision that was "fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments." *Elyea*, 631 F.3d at 859.

This case similarly involves a categorical policy-based denial of HCV treatment, even if the categorical rule in this case is easily distinguishable from the rule in *Elyea*. Indeed, while the "two year remaining" rule in *Elyea* did not involve any type of

medically based decision, the policy at issue here involves a "medical decision" in the sense that it was decided, as a matter of policy, that an F-2 score is insufficiently severe to warrant effective HCV treatment. Nonetheless, the fact that the DOC's policy is based on some medical consideration does not mean that a triage predicated on a categorical rule of delaying treatment for those with F-2 fibrosis is necessarily constitutional. Defendants still bear the burden of showing that the triage was actually warranted under the circumstances and that the policies and methods through which the triage were implemented did not unnecessarily delay Plaintiff from receiving adequate treatment for his serious medical need. On the present record, Defendants have failed to show that the categorical rule of denying effective treatment to inmates with a METAVIR score of F-2 is not arbitrary. They offer no analysis on why they draw a line in the sand declining treatment for scores of F-2 and lower instead of F-1 and lower. Nor do they provide analysis on the relevant HCV inmate population and their varying stages of liver damage during the applicable timeframe, coupled with the cost of treating that population in proportion to specific resource constraints, to show that Plaintiff could not be treated for the span of three years while the progression of his liver damage developed into cirrhosis.

Because the R&R did not address Defendants' remaining arguments regarding personal involvement or qualified immunity, the Court must decide whether or not to proceed on the presently filed pleadings. The Court finds that the most appropriate course of action at this stage is to return this matter to Judge Christel for further proceedings. Issues of qualified immunity and mootness may require further briefing or development of the record, as unresolved factual disputes may bear directly on the arguments

pertaining to qualified immunity. For instance, it is clearly established that deliberate indifference to medical needs in violation of the Eighth Amendment can be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976), and as addressed above, there appears to be a genuine dispute over whether Defendants allowed Plaintiff to develop cirrhosis by delaying effective treatment while failing to provide an annual evaluation between 2015 and 2017 (as prescribed by the DOC's own policy). Accordingly, consistent with this order, Judge Christel may set a schedule for additional briefing, reopen or extend discovery deadlines, conduct an evidentiary hearing, issue further instructions, or conduct any further proceedings as he deems necessary.

Finally, the Court concludes that the posture of this case merits the appointment of counsel to represent Plaintiff. To decide whether exceptional circumstances exist that warrant the appointment of counsel, the Court must evaluate both "the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). The Court finds that this case involves complex issues that Plaintiff lacks the ability to properly address pro se, particularly in light of the complex medical subject matter and potentially far-reaching policy considerations this case presents involving prison administration and the applicable standards of care for the treatment of HCV. Furthermore, while it remains unclear if Plaintiff will succeed in establishing that he suffered a constitutional violation or that Defendants are not entitled to qualified

immunity, the Plaintiff has shown that his likelihood of success is enough that it warrants the aid of capable counsel. The Court is sufficiently convinced that a triage protocol that categorically delays HCV treatment for years violates the Eighth Amendment if it fails to regularly account for whether constraints actually demand the triage. Additionally, the Court is satisfied that a constitutional violation has occurred if the intentional delay in treating Plaintiff's HCV was prolonged for an extra year because Defendants failed to properly provide an annual evaluation in 2016, as demanded by the DOC's own triage protocol, which would have revealed that Plaintiff's severe liver damage qualified him for treatment.

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby order as follows:

(1) This matter is **RETURNED** to Judge Christel for further proceedings; and

(2) The Clerk shall identify an attorney or law firm from the Court's Pro Bono Panel to represent Plaintiff.

**IT IS SO ORDERED**.

Dated this 9th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge