1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                               AT TACOMA

10   CHARLES V. REED,

11                        Plaintiff,            CASE NO. 3:16-cv-05993-BHS-DWC

12         v.                                   REPORT AND
                                                RECOMMENDATION
13   DEPARTMENT OF CORRECTIONS,
     et al.,                                    Noting Date: August 24, 2018
14
                         Defendants.
15

16

17         The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

18   States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants'

19   Motion for Summary Judgment, and Plaintiff Charles V. Reed's Motion for Leave to File a

20   Second Amended Complaint ("Motion to Amend") (Dkt. 74) and Motion to Amend Scheduling

21   Order to Allow for Limited Discovery ("Motion for Discovery") (Dkt. 75). After review of the

22   relevant record, the Court finds Plaintiff has failed to show Defendants are not entitled to

23   qualified immunity because a reasonable person would not have been aware their alleged actions

24   were a violation of Plaintiff's clearly established rights. Therefore, the Court recommends

REPORT AND RECOMMENDATION - 1

1  Defendants' Motion for Summary Judgment (Dkt. 40) be granted as to qualified immunity,

2  Plaintiff's pending Motions be denied as moot, and this action dismissed.

3  **I.    Background**

4        Plaintiff filed this action on December 2, 2016. Dkt. 1. He filed his Amended Complaint,

5  the current operative complaint in this action, on January 18, 2017. Dkt. 8. Plaintiff has been

6  diagnosed with the Hepatitis C Virus ("HCV"). *Id*. Plaintiff alleges HCV has caused serious

7  damage to his liver and that, though the Department of Corrections ("DOC") had access to an

8  extremely effective anti-viral medication, he was not treated with it until the fibrosis in his liver

9  advanced from intermediate to severe. *Id*. It is also undisputed he went without a medical

10  examination related to his liver condition from December 23, 2015 until January 31, 2017 and

11  Plaintiff alleges Defendants acted on a DOC medical policy or protocol that categorically denied

12  the anti-viral medication for prisoners with only minor or intermediate fibrosis of their livers. *See*

13  Dkt. 68, p. 8; dkt. 70, pp. 5-6.

14        On September 25, 2017, Defendants filed a Motion for Summary Judgment, which this

15  Court recommended be granted. Dkts. 40, 57. Defendants raised qualified immunity in the

16  Motion for Summary Judgement; however, because the undersigned found no constitutional

17  violation, the undersigned did not make a determination as to Defendants' qualified immunity

18  argument. *See* Dkt. 57. The Honorable Benjamin H. Settle, the District Judge assigned to this

19  case, found there were still issues of material fact and declined to adopt the recommendation,

20  returning the case to this Court, noting the Court may "set a schedule for additional briefing,

21  reopen or extend discovery deadlines, conduct an evidentiary hearing, issue further instructions,

22  or conduct any further proceedings as [the Court] deems necessary." Dkt. 62, p. 10. Judge Settle

23  also appointed counsel for Plaintiff, finding "that this case involves complex issues that Plaintiff

24

1    lacks the ability to properly address pro se. . . ." *Id*. After ordering and receiving supplemental

2    briefing (Dkts. 65, 68, 76), Plaintiff's counsel filed a Motion to Amend (Dkt. 74) requesting he

3    be allowed to file a Second Amended Complaint. Plaintiff's counsel also filed a Motion for

4    Discovery, asking he be allowed to engage in further discovery. Dkt. 75. Defendants oppose both

5    motions, arguing their Motion for Summary Judgment (Dkt. 40) should be resolved, at least as to

6    qualified immunity, before making a determination as to amendments or additional discovery.

7    Dkts. 81, 82.

8    **II.    Discussion**

9        Defendants contend their qualified immunity arguments raised in their Motion for

10   Summary Judgement should be determined before the Court rules on Plaintiff's pending Motions

11   and that they enjoy qualified immunity for their participation in the Care Review Committee's

12   ("CRC's") alleged decision not to provide Plaintiff with treatment for his HCV. Dkts. 68, 81, 82.

13   They argue that, because Defendants are immune from suit, they would experience prejudice if

14   the suit moves forward. Dkt. 82, pp. 3-4. Plaintiff argues the record is not yet well established

15   enough for a ruling on qualified immunity and requests the Court grant his Motion to Amend and

16   Motion for Discovery so the record can be more adequately developed. Dkts. 76, 85. However,

17   "[w]here a defendant seeks qualified immunity, a ruling on that issue should be made early in the

18   proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."

19   *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds by Pearson v.*

20   *Callahan*, 555 U.S. 223, 236 (2009). In addition, whether Defendants would be prejudiced by

21   being forced to litigate an action from which they are immune is determinative of whether

22   Plaintiff should be allowed to file a Second Amended Complaint. *See Eminence Capital, LLC v.*

23   *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (finding "the consideration of prejudice to the

24

1    opposing party . . . carries the greatest weight" when determining whether amendment should be

2    allowed). Thus, the Court will make a determination on qualified immunity based on the record

3    currently before it.

4         The Court notes it will make a determination only on the qualified immunity argument

5    and Plaintiff's request for declaratory and injunctive relief here. If Judge Settle declines to adopt

6    the Report and Recommendation, the Court will address the other substantive arguments

7    contained in Defendants' Motion for Summary Judgment (Dkt. 40) in a separate Report and

8    Recommendation, and will address Plaintiff's other outstanding Motions (Dkts. 74, 75) in

9    separate Orders or Reports and Recommendations.

10        A.  *Standard of Review*

11        Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

12   file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

13   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

14   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

15   showing on an essential element of a claim in the case on which the nonmoving party has the

16   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

17   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

18   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

19   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

20   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

21   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

22   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

23

24

1  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

2  626, 630 (9th Cir. 1987).

3       *B.   Qualified Immunity*

4       In determining whether an official is entitled to qualified immunity, a court must make

5  the following determination: "whether – resolving all disputes of fact and credibility in favor of

6  the party asserting the injury – the facts adduced at summary judgment show that the officer's

7  conduct violated a constitutional right," and, if the conduct did violate a constitutional right,

8  whether "the constitutional right was 'clearly established.'" *Kennedy v. City of Ridgefield,* 439

9  F.3d 1055, 1060 (9th Cir. 2006) (citing *Saucier v. Katz,* 533 U.S. 194 (2001)).

10      A Court may address the steps of the qualified immunity analysis in whichever order it

11  finds most expedient. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The second step of the

12  qualified immunity analysis provides that defendants are entitled to qualified immunity if their

13  conduct "does not violate clearly established statutory or constitutional rights of which a

14  reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff

15  bears the burden of proving that the right allegedly violated was clearly established at the time of

16  the violation; if the plaintiff meets this burden, then the defendant bears the burden of

17  establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels*

18  *v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir.

19  1996); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502,

20  1509 (9th Cir. 1995), *overruled in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th

21  Cir. 1996); *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011)

22  ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

23

24

1    A right is clearly established if its contours are "sufficiently clear that a reasonable

2 official would understand that what he is doing violates that right." *Kennedy v. City of*

3 *Ridgefield,* 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739

4 (2002)). Although a case need not be directly on point, "existing precedent must have placed the

5 statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152

6 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam)). "In other words,

7 immunity protects all but the plainly incompetent or those who knowingly violate the law."

8 *White*, 137 S.Ct. at 551. "[The Supreme Court] has 'repeatedly told courts – and the Ninth

9 Circuit in particular – not to define clearly established law at a high level of generality.'" *Kisela*,

10 138 S.Ct. at 1152 (quoting *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1775-

11 76 (2015)). Rather, the rule must be settled law, "which means it is dictated by 'controlling

12 authority' or 'a robust consensus of cases of persuasive authority.'" *Dist. of Columbia v. Wesby*,

13 138 S.Ct. 577, 589-90 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)). "It is

14 not enough that the rule is suggested by then-existing precedent. The precedent must be clear

15 enough that *every* reasonable official would interpret it to establish the particular rule the

16 plaintiff seeks to apply." *Id*. at 590 (emphasis added). A rule is too general if "the unlawfulness

17 of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was

18 firmly established.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

19    1.  Promulgation of HCV Protocol

20    Defendants allege in their Motion for Summary Judgment that all Defendants enjoy

21 qualified immunity because the only case law on point noted a different triage protocol, similar

22 to that promulgated by the DOC, could be constitutional. Dkt. 40, pp. 22-24 (citing *Roe v. Elyea*,

23 631 F.3d 843, 863 n.17 (7th Cir. 2011)). Thus, they argue promulgation of such a policy was not

24

1    unconstitutional under clearly established federal law. However, Judge Settle found "the fact that

2    the DOC's policy is based on some medical consideration does not mean that a triage predicated

3    on a categorical rule of delaying treatment for those with F-2 fibrosis is necessarily

4    constitutional." Dkt. 62, p.9. Neither this Court nor Judge Settle has determined whether

5    promulgation of the protocol was unconstitutional based on clearly established federal law.

6         The Ninth Circuit has held the categorical denial of medically necessary care based only

7    on administrative policy constitutes deliberate indifference. *Colwell v. Bannister*, 763 F.3d 1060,

8    1063 (9th Cir. 2014). However, that case dealt with a prisoner who suffered from cataracts, and a

9    policy that summarily denied surgery when the cataracts only affected one of a prisoner's eyes.

10    *Id*. at 1068. The decision to deny treatment in that case was based solely on an administrative

11    policy and was contrary to several medical opinions stating that the prisoner required surgery. *Id*.

12    The Ninth Circuit held that the "blanket, categorical denial of medically indicated surgery solely

13    on the basis of an administrative policy" was "the paradigm of deliberate indifference." *Id*. at

14    1063. That court noted that, though the policy in question required "case by case" consideration,

15    the practice of corrections and medical staff was to deny treatment "as long as a prisoner has one

16    'good' eye." *Id*. at 1069. The court also implied in dicta that a denial of treatment based on a

17    medical recommendation, or conflicting medical opinions, would not necessarily run afoul of the

18    Constitution. *Id*.

19         *Colwell* is similar to the case cited by Defendants, *Roe v. Elyea*, 631 F.3d 843 (7th Cir.

20    2011). In that case, the Seventh Circuit found a policy that triaged HCV patients based solely on

21    administrative policy, rather than medical determinations, ran afoul of the Eight Amendment. *Id*.

22    at 862-63. However, that court also noted "the Constitution is violated when [non-medical

23    factors] are considered *to the exclusion of reasonable medical judgment* about inmate health." *Id*.

24

1   at 863 (citing *Johnson v. Doughty*, 533 F.3d 1001, 1013 (7th Cir. 2006)) (emphasis in original).

2   Again, the Seventh Circuit implied taking medical opinions into account, even if there is a

3   baseline policy or protocol in place, would not run afoul of the Constitution.

4         Here, the DOC's protocol as of December 2013 stated: "Metavir score of 0-2 (if

5   [Genotype] 1) or 0-1 (if [Genotype 2-6): Treatment for hepatitis C not currently necessary.

6   Document education and schedule follow up at least annually. Rescreen for treatment annually

7   and biopsy every 5 years or as appropriate (may need to be more frequent if co-infected with

8   HIV)." Dkt. 70-1, p. 5. In an earlier section, the protocol stated: "If patient has extrahepatic

9   manifestations of hepatitis C that warrant treatment, a liver biopsy is not needed – Defer biopsy

10   and skip step 15 after MD review." *Id*. Defendant Strick has noted "[c]ases that have

11   extrahepatic manifestations can be presented to the HCV CRC regardless of the liver fibrosis

12   score at the discretion of the treatment provider." Dkt. 70. This indicates that, though the general

13   rule holds patients with METAVIR scores of F2 and below are not eligible for anti-viral

14   treatments, in certain circumstances individuals with more extreme symptoms stemming from

15   HCV would be able to acquire the anti-viral treatment. Thus, the protocol does not provide or

16   withhold medical treatment based "*solely* on the basis of an administrative policy." *Colwell*, 763

17   F.3d at 1063 (emphasis added). Similarly, the protocol does not provide or withhold treatment to

18   the exclusion of medical recommendations. *Roe*. 631 F.3d at 863. Rather, the protocol provides a

19   guiding principal that may be overridden if a prisoner exhibits additional symptoms and a

20   medical provider determines the symptoms warrant further treatment.

21         Though the law is clearly established that a blanket policy providing treatment based

22   solely on administrative policy is unconstitutional, the law is not clearly established as to policies

23   that provide exceptions for additional symptoms or provide leave for providers to recommend

24

1    other treatment. The Court does not find that the rule is so clear that "every reasonable official"

2    would be aware the promulgation of such a policy was unlawful. *Wesby*, 138 S.Ct. at 589-90.

3    Because the law is not sufficiently clearly established, the promulgation of the DOC policy is not

4    unconstitutional beyond debate. *Kisela*, 138 S.Ct. at 1152. Therefore, the Court recommends

5    Defendants' Motion for Summary Judgment be granted as to Defendants' qualified immunity for

6    promulgating the policy.

7        2.  <u>Application of HCV Protocol to Plaintiff</u>

8        Plaintiff alleges Defendants Strick and Hammond, as well as other Defendants through

9    their decisions on the CRC, unlawfully denied him treatment for his HCV. He also alleges his

10   HCV was not monitored for 13 months and that the lack of monitoring led to additional injury. It

11   is disputed how much information Defendants had when they made their decision not to provide

12   anti-viral medications, but Judge Settle has noted the CRC's decision "suggests that Plaintiff was

13   categorically denied effective treatment because his F-2 score was not sufficiently severe to

14   warrant treatment." Dkt. 62, p. 6. Judge Settle continued, stating that, viewing the facts in the

15   light most favorable to Plaintiff, it appeared Defendants may have known about Plaintiff's

16   symptoms and an effective course of anti-viral treatment, but "intentionally delayed such

17   treatment until Plaintiff's liver damage grew so severe that treatment could no longer be delayed

18   without risk of dangerous complications and death." *Id*. The question then is whether the law

19   was clearly established such that Defendants were on notice that their denial of treatment for

20   Plaintiff was unconstitutional.

21       The Court agrees it has long been established that the denial or delay of necessary

22   medical care constitutes medical deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97,

23   104-05 (1976). However, the Supreme Court has indicated this Court must not interpret the law

24

1   "at a high level of generality," but instead must look to the specific context of the case. *See*

2   *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Neither Plaintiff, Defendants, nor the Court have

3   found a case directly on point, applying the more general standard to a factual situation

4   analogous to this case and explaining that delay of monitoring for a prisoner with HCV who has

5   not exhibited any additional adverse symptoms, or a decision to withhold anti-viral medications

6   until HCV has progressed to a more advanced stage, is unconstitutional. However, several

7   district courts have dealt with these questions.

8       The District of South Carolina held in 2017 that there is no clearly established law at all

9   as to Defendants' constitutional duty to provide a prisoner with anti-viral medications for HCV.

10  *Cunningham v. Sessions*, Cae No. 9:16-cv-1292-RMG, 2017 WL 2377838 at *4 (D. S.C. May

11  31, 2017). However, that court also noted that allegations a prisoner was denied all curative

12  treatment for HCV was sufficient to survive a motion to dismiss. *Id*.

13      In contrast, the Eastern District of Pennsylvania has found that denial of anti-viral

14  medication based on fibrosis level, leading to worsening liver conditions, can constitute

15  deliberate indifference. *See Chimenti v. Pennsylvania Dep't of Corr.*, Civ. Action No. 15-3333,

16  2017 WL 3394605 at *8 (E.D. Penn. Aug. 8, 2017); *see also Abu-Jamal v. Wetzel*, No. 3:16-CV-

17  2000, 2017 WL 34700 at *11 (E.D. Penn. Jan. 3, 2017). The District of Connecticut has held

18  more generally that a denial of a particular medical treatment could constitute unlawful denial or

19  delay. *Parks v. Blanchette*, 144 F. Supp. 3d 282, 300-301 (D. Conn. Nov. 4 2015). However, the

20  Eastern District of Missouri has held the failure to monitor a prisoner's condition through

21  bloodwork to ensure a prisoner's HCV was not advancing unexpectedly amounted only to

22  negligence, not deliberate indifference. *See Holloway v. Correctional Medical Services*, 2010

23  WL 908491 at *6 n.2 (E.D. Missouri March 9, 2010).

24

1       Indeed, the Western District of Washington has held in at least one case that refusal by

2 medical staff to provide HCV treatment when a prisoner's METAVIR score is at F2 does not

3 constitute deliberate indifference so long as a doctor finds the prisoner does not require medical

4 intervention. *See Matter v. Wash. Dep't of Corr.*, 2014 WL 4449925 at *8 (W.D. Wash. 2014)

5 ("[Plaintiff] was diagnosed with Stage 2 fibrosis which, according to Dr. Kenney, is considered

6 to be low to moderate and does not require treatment"; the Court notes the plaintiff in that case

7 contended not that F2 fibrosis requires treatment, but that the biopsy analysis was inaccurate).

8       Plaintiff contends Defendants denied him treatment for HCV, and that denial or delay of

9 treatment, even if contingent on an official policy, is unconstitutional. *See* Dkt. 76, pp. 18-24

10 (citing numerous cases establishing the delay of medical treatment can constitute deliberate

11 indifference). He alleges Defendants delayed medical care based on a categorical, blanket policy

12 that precluded any prisoner with a MITAVIR score of F2 or below from receiving treatment. *See*

13 Dkt. 8.

14       However, Plaintiff has failed to provide clearly established law to indicate that failure to

15 actively monitor a prisoner with HCV, without any indication of a change of circumstance,

16 constitutes deliberate indifference. As noted in *Colwell* and *Elyea*, administration of a policy that

17 withholds treatment for purely administrative reasons may be unconstitutional. *Colwell*, 763 F.3d

18 at 1063; *Elyea*, 631 F.3d at 862-63. However, the Court has found in Section II(B)(1) *supra*, that

19 the DOC's policy here was not the same blanket policy precluded in *Colwell* or *Elyea*. Rather, it

20 allows prisoners who suffer from extrahepatic symptoms to seek care through the CRC with any

21 stage of fibrosis. Section II(B)(1) *supra*; *see also* Dkt. 68, pp. 4-5. Thus, neither *Colwell* nor

22 *Elyea* provide clearly established law indicating that, by adhering to the DOC's protocol and

23

24

1  allowing Plaintiff to request anti-viral medication if a healthcare provider believed it was

2  warranted, Defendants violated Plaintiff's constitutional rights.

3         All the cases Plaintiff cites pertain to delays in providing medical treatment generally, but

4  do not pertain to hepatitis specifically or to a failure to monitor a prisoner's condition. *See* Dkt.

5  76, pp. 18-24. For example, Plaintiff cites *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir.

6  1989), where a prisoner was denied necessary dental care. However, in that case, the defendants

7  knew of, yet actively failed, to provide the necessary medical care. *Id*. In this case, though

8  Defendants were aware of Plaintiff's HCV, there was no evidence that his F2 fibrosis was

9  advancing more quickly than expected or that immediate intervention was necessary. *See* Dkt.

10 68, pp. 6-7, 9. Similarly, Plaintiff cites *Jett v. Penner*, 439 F.3d 1091, 1096-97 (9th Cir. 2006),

11 noting the Ninth Circuit held a 16 day delay in treatment for a broken thumb could constitute

12 deliberate indifference. However, again, that case dealt with delay of treatment for a broken

13 bone, not a slow-moving and longstanding infection such as HCV. *See* Dkt. 68, p. 9. Failure to

14 immediately treat a broken thumb is not analogous to declining to provide an anti-viral

15 medication to a person with intermediate, rather than severe, fibrosis. Further, Plaintiff cites

16 *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir. 1986), a case where a prisoner was denied treatment

17 for three weeks despite daily requests. Here, there is no indication Plaintiff requested additional

18 treatment during the time Defendants failed to monitor him. Dkt. 68, p. 22 (only request noted in

19 2016 was for presentation of his HCV case to the CRC, which occurred). All the cases Plaintiff

20 cites support the assertion he was unlawfully denied treatment are distinguishable from the case

21 before the Court.

22        Plaintiff has not argued that he displayed extrahepatic symptoms, or that his providers

23 recommended he be given additional treatment that was not provided. Indeed, Defendants note

24

that his providers did not indicate any extrahepatic manifestations indicating a more severe liver

disease. Dkt. 71, p. 2. Though the CRC was presented with the fact Plaintiff had a METAVIR

score of F2, they were not presented with evidence he had any additional symptoms requiring

anti-viral treatment and he did not present any medical opinions indicating that treatment was

medically necessary at that time. Indeed, the CRC noted that, though it was denying care based

on the DOC's protocol, Plaintiff's APRI score had not changed since his diagnosis with F2

fibrosis, leading them to conclude there was no reason to suspect "that there has been unusually

rapid progression of his fibrosis." Dkt. 42-1, p. 67. The law Plaintiff provides is a general duty

not to delay medical care when Defendants realize medical care is necessary. He has not

provided clearly established law to show that following a baseline policy, in the absence of

additional symptoms demonstrating additional necessary treatment, was a violation of Plaintiff's

constitutional rights "beyond debate." *Kisela*, 138 S.Ct. at 1152.

Judge Settle noted a deliberate failure to monitor Plaintiff could constitute deliberate

indifference if he was monitored inadequately. Insofar as Plaintiff alleges Defendants acted with

deliberate indifference when they did not provide HCV checkups from December 23, 2015 until

January 31, 2017, he has provided no evidence to suggest he requested, but was denied,

treatment during that time. In addition, Defendants have provided evidence indicating Plaintiff's

APRI scores were maintained at a safe level and that they did not change significantly between

2015 and 2017, indicating additional monitoring during 2016 would not have shown a change in

Plaintiff's liver function or changed Defendants' course of action. *See* Dkt. 6, p. 8; Dkt. 71, pg.

3. Thus, Plaintiff has failed to explain how monitoring during this time would have avoided

additional injury to Plaintiff. Further, the standard range for reevaluation under the DOC

protocol between examinations (which Plaintiff appears not to challenge) is twelve months. Dkt.

1    71, p. 3. The gap between examinations here was only thirteen months, a clinically insignificant

2    difference according to expert medical opinions provided by Defendants. Dkt. 71, p. 3. Though

3    failure to monitor Plaintiff's condition could constitute negligence, because Defendants had no

4    reason to believe Plaintiff's condition was progressing any faster than normal, the Court does not

5    find that Defendants' conduct rises past negligence and into deliberate indifference.

6          Finally, Plaintiff alleges Defendants acted with deliberate indifference because they

7    failed to examine Plaintiff with a "fibroscan" device (a device able to evaluate fibrosis without

8    the need for a biopsy) until 2017. However, the DOC's protocol indicates Plaintiff would receive

9    a "biopsy every 5 years or as appropriate" depending on other emergent symptoms. 70-1, p. 5.

10   Defendants explain this is because of the generally slow progression of HCV infections. Dkt. 68,

11   p. 9. In addition, Plaintiff did not exhibit any extrahepatic symptoms, even in 2017 just before he

12   was examined with the fibroscan and diagnosed with severe fibrosis. The fact that his HCV had

13   escalated so quickly was not foreseeable based on the information in Defendants' possession.

14   Dkt. 70, p. 6 ("[G]iven the normally very slow progress of [Plaintiff's] disease and his stable

15   APRI scores over the entire period [of observation], it was not reasonably foreseeable that his

16   condition would or had progressed to cirrhosis."). Plaintiff has failed to provide any clearly

17   established law showing that a failure to provide a biopsy or biopsy alternative with no

18   symptoms to indicate an advancing condition rose above mere negligence to a violation of

19   Plaintiff's constitutional rights.

20         Even if Defendants' actions were unconstitutional, Plaintiff has failed to show that "every

21   reasonable official" would have known that following the DOC's policy and allowing exceptions

22   for prisoners expressing extrahepatic symptoms would run afoul of the Constitution. *Wesby*, 138

23   S.Ct. 589-90. They have also not shown neglecting to monitor Plaintiff, without more, rises

24

1    beyond negligence and into the realm of deliberate indifference. Because Plaintiff has not shown

2    every reasonable official should have known this conduct was unlawful, the law is not

3    sufficiently clear. Therefore, the Court recommends Defendants' Motion for Summary

4    Judgement be granted as to Plaintiff's allegations that he was unlawfully delayed in receiving

5    anti-viral medication and that he did not receive an examination for over 12 months.

6          3.    Conclusion

7          Plaintiff has not provided clearly established law showing Defendants' promulgation of a

8    DOC protocol providing anti-viral medication for prisoners with METAVIR scores of F3 and

9    higher, but allowing other prisoners to receive such treatment if they exhibited extrahepatic

10   symptoms, was unconstitutional. They have also not provided clearly established law indicating

11   Defendants' failure to monitor Plaintiff or failure to provide anti-viral medications without

12   extrahepatic symptoms rose beyond negligence and into deliberate indifference. Therefore, the

13   court finds Defendants are entitled to qualified immunity and recommends Defendants' Motion

14   for Summary Judgment (Dkt. 40) be granted as to qualified immunity.

15         *C.  Injunctive and Declaratory Relief*

16         The question the Court asks when determining whether declaratory judgment is

17   appropriate is "whether the facts alleged, under all the circumstances, show that there is a

18   substantial controversy, between parties having adverse legal interests, of sufficient immediacy

19   and reality to warrant the issuance of a declaratory judgment." *Bayer v. Neiman Marcus Group,*

20   *Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (quoting *MedImmune, Inc.v. Genentech, Inc.*, 549 U.S.

21   118, 127 (2007)). Similarly, when determining whether injunctive relief is appropriate, "[a]

22   request for injunctive relief remains live only so long as there is some present harm left to

23   enjoin." *Id*. at 864 (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir.

24

1    1995)). If there is no case or controversy – that is if the alleged constitutional violations have

2    ceased – the requests for both declaratory and injunctive are moot and should be dismissed. *Id*. at

3    864, 868.

4         Here, Plaintiff requests the Court enter declaratory judgment stating Defendants actions

5    in withholding the anti-viral medication were unconstitutional, and injunctive relief to provide

6    the anti-viral medication. However, Plaintiff has now received the anti-viral medication he

7    requested. *See* Dkt. 68, pp. 14-15; Dkt. 76, p. 2. Thus, there is no longer a controversy insofar as

8    Plaintiff requests anti-viral medication and his requests for declaratory and injunctive relief are

9    moot. Therefore, the Court recommends denying declaratory and injunctive relief.

10        *D.  Outstanding Motions*

11        Because the Court has recommended Defendants' Motion for Summary Judgment be

12   granted as to qualified immunity, granted as to declaratory and injunctive relief, and the case

13   dismissed, the Court also recommends all outstanding motions be denied.

14        If the District Court determines Defendants are not entitled to qualified immunity and

15   declines to adopt this Report and Recommendation, the Court will enter a separate Order or

16   Report and Recommendation for Plaintiff's Motion to Amend (Dkt. 74), Motion for Discovery

17   (Dkt. 75), and Defendants' Motion for Summary Judgment (Dkt. 40) on the merits.

18   **III.    Conclusion**

19        Based on the foregoing, the Court concludes Defendants are entitled to qualified

20   immunity both as to the promulgation of the DOC policy and the alleged delay in providing

21   Plaintiff with anti-viral medication for his HCV. Plaintiff is also not entitled to declaratory or

22   injunctive relief because those claims are moot. Accordingly, the Court recommends

23

24

1  Defendants' Motion for Summary Judgment (Dkt. 40) be granted as to qualified immunity, all

2  pending Motions be denied as moot, and the case dismissed.

3         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8  August 24, 2018, as noted in the caption.

9

10        Dated this 9th day of August, 2018.

11

12                                              David W. Christel

13                                              United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24