UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES V. REED,

                       Plaintiff,

     v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS,
et al.,

                 Defendants.

CASE NO. C16-5993 BHS

ORDER ON DEFENDANTS'
THIRD SUMMARY JUDGMENT
MOTION

THIS MATTER is before the Court on Magistrate Judge David W. Christel's

Report and Recommendation ("R&R") recommending that the Court (1) grant

Defendants' Motion to Strike evidence Plaintiff Charles Reed provided in his

supplemental response to summary judgment; (2) grant in part and deny in part

Defendants' third Motion for Summary Judgment, Dkt. 160; and (3) dismiss Reed's

federal claims with prejudice, dismiss his state law claims without prejudice, and close

the case. Dkt. 180. Reed objects, Dkt. 188, and Defendants responded, Dkt. 189.

# I.   BACKGROUND

The factual context of the case and its long procedural history are described in Judge Christel's prior Reports and Recommendations, *see* Dkts. 57, 87, and 137, and in the R&R which is the subject this Order, Dkt. 180. Neither need to be detailed here.

Reed has had Hepatitis C ("HCV") since 1979. The Department of Corrections ("DOC") confirmed this diagnosis in 2012, while Reed was incarcerated at Airway Heights Corrections Center. By June 2014, Reed had a "METAVIR" score of F2, which indicates moderate scarring of the liver on the F0–F4 scale. In August 2014, Reed was transferred to Stafford Creek Corrections Center, where he sought treatment for his disease. His treatment request was ultimately referred to the Hepatitis C Care Review Committee ("CRC"), which in January 2016 denied his request for treatment under the DOC's then-applicable 2015 triage protocol.

Reed grieved the denial through Levels I, II, and III of the DOC's grievance system, all of which were disapproved. In February 2016, Reed sent a Notice of Complaint to Defendant Dr. Hammond (DOC's Chief Medical Officer), complaining that he was not receiving necessary medical care for a serious medical condition. He repeated this complaint in a letter to Hammond and Defendant Dr. Strick (DOC's Statewide Infectious Diseases Physician) three days later. *See generally* Dkt. 96 at 6–14.

Reed claims that his HCV has been inadequately monitored and treated over time. He alleges that the DOC's HCV protocol changed in October 2016, making those with a METAVIR score of F2 or higher eligible for the highest treatment priority for anti-virial medication. He alleges that no one informed of this change and that he was not given

high priority treatment despite his eligibility. Reed sued pro se in late 2016, Dkts. 1 and 6, alleging that Hammond, Strick, the DOC, and others violated his Eighth and Fourteenth Amendment rights by denying him access to necessary medical treatment.

Reed ultimately was appointed counsel, Dkt. 63, and filed a second amended complaint, Dkt. 96. Reed alleges that he finally obtained a new liver scan in June 2017, which showed that he had a METAVIR score of F4 and indicated very severe liver scarring known as cirrhosis. Dkt. 96 at 7. His operative complaint asserts an Eighth Amendment claim under 42 U.S.C. § 1983 and a state law medical negligence claim under RCW 7.70.040. Dkt. 96 at 10–11. The remaining Defendants[1]—Hammond, Strick, and Dr. Smith,[2] Stafford Creek's Facility Medical Director at the time—have unsuccessfully sought summary judgment and judgment on the pleadings on qualified immunity and other grounds during this litigation. *See* Dkts. 40, 62, 90, 108, 120, 132, and 147.

Now pending is Defendants' third motion for summary judgment, Dkt. 160, which argues that Reed did not exhaust his administrative remedies and that he cannot meet his burden of demonstrating that Drs. Hammond, Strick, and Smith violated his Eighth Amendment rights for several reasons. They also argue that they are entitled to qualified immunity, though that argument is based primarily on the position that there was no

---

[1] Reed has conceded his claims against Defendant Robert Weber, and as the R&R recommends, Dkt. 180 at 2, Reed's claims against Weber are DISMISSED with prejudice.

[2] Smith now goes by Kariko. The Order uses Smith for clarity.

1   constitutional deprivation, rather than an argument that any violation was not clearly

2   established.[3] *Id.* at 16–17.

3       Defendants also seek summary judgment on Reed's state law medical malpractice

4   claim, arguing that he has failed to provide the required expert testimony that their

5   conduct fell below the standard of care and that he has not shown that any breach of duty

6   proximately caused him harm. *Id.* at 19–23. They also argue they are entitled to qualified

7   immunity under state law. *Id.* at 22.

8       Judge Christel held oral argument on the motion and directed the parties to

9   provide a round of supplemental briefing. Dkt. 173. Defendants filed a supplemental

10  brief, Dkt. 175, and Reed filed a supplemental response, Dkt. 176. Reed also filed a

11  supplemental declaration of counsel with additional evidence attached as exhibits. Dkt.

12  177. Counsel testified that each exhibit had been produced by Defendants in discovery,

13  except for the deposition of Defendants' expert, Dr. Zawitz, Dkt. 177-5, Ex. E. *See* Dkt.

14  177.

15      Defendants' supplemental reply, Dkt. 178, included an objection to the newly

16  submitted evidence, arguing that the Court's Order sought "supplemental briefing to

17  clarify several issues" and asked the parties to "cite relevant law and evidence in the

18  record." Dkt. 178 at 1 (citing Dkt. 173 at 1, 3). Defendants moved to strike the evidence

19  that was not already in the summary judgment record, which included Exhibits E–L, N,

20  and O. *See* Dkts. 177-5–177-12; 177-14; 177-15.

21  _____

22      [3] Defendants have previously moved for summary judgment and for judgment on the
    pleadings on qualified immunity, and those motions have been denied. *See* Dkts. 62, 90, and 147.

Judge Christel's R&R explained that his Order sought citations to the existing summary judgment record and was not "an invitation for Plaintiff to have a second opportunity to bring new evidence to the Court's attention which could and should have been brought in the original briefing and submissions." Dkt. 180 at 9. It agreed that the Defendants would be prejudiced by their inability to respond to the evidence and therefore granted Defendants' motion to strike the bulk of the evidence provided in Reed's supplemental response. *Id*.

The R&R recommended holding that Reed did exhaust his administrative remedies and denying Defendants' third summary judgment motion on that basis. *Id.* at 24. Defendants do not object to that recommended ruling, and it is ADOPTED.

The R&R recommended granting Defendants' motion on Reed's Eighth Amendment claim based on its conclusion that Defendants did not violate Reed's constitutional rights. As a result, it did not reach the issue of whether any violation was clearly established. *Id*. at 50. Finally, the R&R recommended declining to continue exercising supplemental jurisdiction over Reed's remaining state law medical malpractice claim, under 28 U.S.C. § 1367(c)(3), and dismissing that claim without prejudice to re-file in state court. *Id*. at 50–51.

This Court has previously modified or declined to adopt some of Judge Christel's recommendations about resolving this complicated case, Dkts. 62, 90, and 147, and while it appreciates the hard work reflected in the R&Rs, it must again differ from its colleague on the resolution of the issues raised this time. The Court will not strike Reed's "new" evidence, and it does not agree that Hammond, Strick, and Smith are entitled to summary

judgment on Reed's Eighth Amendment claim based on their argument that they did not

violate his rights as a matter of law. For that reason, the Court cannot agree that

Defendants' entitlement to qualified immunity, even if they did violate Reed's rights,

need not be addressed. Finally, it does not agree that Reed's state law medical

malpractice claims should be dismissed without prejudice and re-filed in state court, after

nearly six years of active litigation here.

     The issues are addressed in turn.

## II.   DISCUSSION

**A.   Legal Standards**

     A district judge must determine de novo any part of the magistrate judge's

disposition to which a party has properly objected. The district judge may accept, reject,

or modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). Objections to a R&R are

not a vehicle to relitigate the same arguments carefully considered and rejected by the

Magistrate Judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16–41–M–

DLC–JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases). A

proper objection requires specific written objections to the findings and recommendations

in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en

banc).

     Summary judgment is proper if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is "no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation omitted). There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B.      The Court declines to adopt the recommendation to strike relevant, admissible evidence.**

Reed objects to the R&R's striking the evidence he submitted in support of the supplemental briefing the Magistrate Judge sought and authorized, and the provision of which violated no rule of civil procedure or evidence. Dkt. 188 at 1–4. Reed argues that by striking his evidence, the Magistrate Judge effectively ignored relevant, admissible evidence. He explains that he read the Order to mean to supply evidence in the larger "record" (exchanged in discovery, as opposed to, for example, a new declaration from an undisclosed expert). *Id.* at 2. He points out, persuasively, that even on this review this Court may "receive further evidence," Fed. R. Civ. P. 72(b)(3), and that it in any event should review the stricken evidence as part of its de novo review of the underlying issues triggered by his objections, Dkt. 188 at 2.

It is true that one fair reading of Judge Christel's Order would have been to use the supplemental briefing to point to evidence already in the summary judgment record, and his R&R confirms that that is what he intended. But Judge Christel had issued a substantially similar Order, Dkt. 67, with respect an earlier summary judgment motion, Dkt. 40, and in response Defendants filed two substantive declarations replete with "new" exhibits. *See* Dkt. 70 (Strick Declaration), Dkt. 70-1 (fifteen pages of exhibits), Dkt. 71 (Eschbach Declaration),[4] and Dkt. 71-1 (twelve pages of exhibits). In short, it is not entirely out of the norm, generally or in this case, for a party asked to provide post-

---

[4] Defendants current, third motion for summary judgment relies on this evidence. Dkt. 160 at 4.

1  hearing summary judgment briefing to support that filing with additional evidence, the

2  need for which was revealed by the underlying request for briefing. It was not unfair of

3  Reed to act in a similar manner, in response to a similar order.

4      The Court cannot agree that the evidence should have been stricken as prejudicial

5  or unfair to Defendants. This is Defendants' *fifth* dispositive motion in the case. Any

6  explicit or implicit argument that one gets only a single chance to build a summary

7  judgment case plainly has not applied in this case. The case is almost six years old, and it

8  does not have a trial date. Reed's proffered evidence is not new, at least not to the

9  Defendants: they produced all of it in discovery, except for the deposition of their expert,

10  Dr. Zawitz, the opinions of whom both the Defendants' motion[5] and the R&R[6] expressly

11  rely. Indeed, Reed alleges that, because of Zawitz's schedule, he was not able to depose

12  Zawitz until after his initial summary judgment response was filed. Dkt. 188 at 4.

13      Defendants' motion to strike was based on their claim they were prejudiced

14  because they were "unable" to respond to the additional evidence. But Defendants had

15  ample opportunity to respond.

16

17  _____

18      [5] *See* Dkt. 160 at 4 ("According to Defendants' expert, Dr. Chad Zawitz, M.D., Defendants' deferral of treatment for early stage fibrosis with ongoing interval monitoring was

19  consistent with the general practice in the community-at-large at that time, including American Association for the Study of Liver Disease/Infectious Diseases Society of America (AASLD/IDSA) and Federal Bureau of Prisons (FBOP) Guidelines.").

20      [6] *See* Dkt. 180 at 39 ("Dr. Zawitz opined Plaintiff's symptoms were not of the nature outlined or implied in the DOC HCV protocol and are not the type of extrahepatic symptoms

21  which indicate a rapid progression. Dr. Zawitz opined the CRC's 2016 decision was consistent with their active protocol as well as the current standard of care at that time." (internal citations

22  omitted)).

Judge Christel's Order authorizing and requesting an additional round of briefing, Dkt. 173, expressly permitted Defendants to file a supplemental reply. Defendants could have used that filing to respond to or rebut Reed's "new" evidence, rather than, or perhaps in addition to, objecting to it. Defendants filed their reply but did not address Reed's evidence other than to ask that it be stricken as untimely. Any prejudice from electing not to do so is not unfair and it is not attributable to Reed.

Defendants' Response to Reed's Objections to the R&R relies on the rule that a Court will not generally address arguments or evidence raised for the first time in a reply brief. Dkt. 189 at 2 ("new evidence should not generally be offered with a reply brief"). But that rule applies to *moving parties*, not to the non-moving party's responsive brief. *See Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time *in Reply* are waived." (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000) (emphasis added)). The purpose of the rule is that it would be unfair to grant summary judgment on evidence or argument to which the non-moving party did not have an opportunity to respond. That is not this case.

While the procedural posture of this case (post-hearing supplemental briefing on a fifth dispositive motion) was perhaps slightly unusual, it is inarguably the standard course for a non-moving plaintiff to respond to a summary judgment motion with evidence supporting his argument that a question of fact precludes summary judgment in the defendant's favor. *Celotex*, 477 U.S. at 323–24. Reed did not need, and need not have requested, a Rule 56(d) continuance of Defendants' motion to obtain more evidence; he

sought to introduce evidence he had already obtained from Defendants into the summary

judgment record, in light of the oral argument on Defendants' motion. In this Court's

view, that is not an act worthy of what would amount to an unreasonable sanction. Reed

accurately distinguishes his conduct in submitting the evidence from authority striking

evidence in much more "extreme" situations, such as failing to disclose an expert. *See*

Dkt. 188 at 2.

Finally, and in any event, Reed correctly argues that because he is objecting to the

recommendation that the Court strike these exhibits, this Court must review the ruling,

and the documents, de novo, under Rule 72. For these reasons, the Court DECLINES to

adopt the R&R's recommendation that the Court strike a portion of the exhibits Reed

filed at Dkt. 177. Defendants' Motion to Strike is DENIED.

## C. Viewed in the light most favorable to Reed, the evidence would support a jury verdict finding Defendants violated Reed's Eighth Amendment rights.

Reed claims that Defendants delayed treating his HCV for years despite their

awareness of the serious medical risk posed by failing to treat his disease. He argues that

he had, and complained of, "extrahepatic manifestations" of HCV that warranted

treatment with Direct-Acting Anti-Virals ("DAA") that would have slowed his disease,

even under the DOC's 2015 protocol. He argues that Hammond and Strick were on the

CRC that denied him treatment in January 2016. He argues that his F2 METAVIR score

should have permitted him treatment under the DOC's revised October 2016 HCV

protocol even absent such symptoms, but no one even told him about the revision, and no

one treated him despite his eligibility, his symptoms, and his request for treatment. He

argues and demonstrates that no one reassessed his METAVIR score until June 2017, when a "Fibroscan" test revealed his score had progressed to F4 (the highest), indicating cirrhosis. He alleges that the delay and the lack of treatment amounts to the Defendant doctors' deliberate indifference to his serious medical needs and a violation of his Eighth Amendment rights. *See* Dkts. 96 and 162 at 1–4.

The parties agree that a prisoner plaintiff claiming an Eighth Amendment violation due to a medical condition must show deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to a serious medical need requires an official "knows of and disregards an excessive risk to inmate health or safety." Dkt. 160 at 8 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Defendants argue that to show a constitutional violation, Reed must do more than show culpability greater than an ordinary lack of due care for a prisoner's health; the Court's inquiry must focus on what the defendant doctors actually knew, not what they should have known. *Id*. They argue, correctly, that this standard requires evidence of both objective and subjective components.

First, the deprivation alleged must objectively be sufficiently serious that it results in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To demonstrate this objective component, an inmate must establish (1) there was some degree of actual or potential injury, and (2) society considers the acts or omissions of which the plaintiff complains to be so grave that exposing anyone to the acts or omissions, unwillingly,

violates contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Estelle*, 429 U.S. at 97.

Second, a prison official is liable if he knows of and disregards an excessive risk to inmate health or safety. He must both be aware of facts from which an inference could be drawn that there is a substantial risk of serious harm, and he must actually draw that inference. *Farmer*, 511 U.S. at 837. Against these legal standards, Defendants argue in this motion (as in their prior motions) that Reed cannot make out a constitutional violation as a matter of law.

As an initial matter, Defendants urged the Court to evaluate the constitutionality of each of the events about which Reed complains separately and, at least implicitly, not to look at the totality of the circumstances surrounding Reed's treatment while he was under Defendants' medical care. Judge Christel agreed, and the R&R divided Reed's Eighth Amendment claim into four distinct events. It did so because Reed is obligated to demonstrate that Defendants personally participated in each constitutional deprivation. Dkt. 180 at 27. It recommends granting summary judgment on each "claim" and dismissing Reed's Eighth Amendment claim.

Reed objects to this "divide and conquer" approach, arguing that the denial of medical care over time is a single constitutional claim, and a defendant cannot divide each discrete act or moment into a distinct claim and argue that that discrete moment was not unconstitutional. Dkt. 188 at 11 (citing *McAlphin v. Toney*, 375 F.3d 753 (8th Cir. 2004) (reversing district court's decision to construe plaintiff's allegations as multiple claims rather than a single claim when they all related to the same denial of medical

1   treatment)). Reed also objects generally to the R&R's application of the summary

2   judgment standard, arguing that the R&R overtly refused to view the evidence in the light

3   most favorable to him, the non-moving party, and to draw all justifiable inferences in his

4   favor. He argues that the R&R fails to do so "over and over." *Id.* at 4.

5           The first of these instances relates to the R&R's conclusion that a difference of

6   medical opinion cannot amount to a constitutional violation, as a matter of law. Dkt. 180

7   at 39 ("A mere difference of opinion as to which medically acceptable course of

8   treatment should be followed does not establish deliberate indifference." (citing *Sanchez*

9   *v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). The R&R describes the parties' experts'

10  competing opinions about Reed's care, *id.* at 38–42, but concludes—based on the opinion

11  testimony of Defendants and their expert—that a difference of medical opinion over

12  which course of treatment was best cannot be a constitutional violation as a matter of law,

13  *id*. at 42.

14          Reed responds, accurately, that this "difference of medical opinion" concept

15  applies only where the competing view of medical opinions are both medically

16  acceptable and that that is a question of fact for the jury. Dkt. 188 at 4–5 (citing *Snow v.*

17  *McDaniel*, 681 F.3d 978, 987–88 (9th Cir. 2012), *overruled on other grounds by Peralta*

18  *v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). Defendants' claim that their own testimony,

19  and that of their expert, effectively rebuts contrary evidence as a matter of law is not

20  correct. As Reed points out, Defendants' expert, Dr. Zawitz, is not an HCV expert.

21  Reed's expert, Dr. Gish, who is an HCV expert, testifies to the opposite conclusion. Reed

22

1    claims that the R&R accepted Zawitz's testimony and rejected Gish's, which is an

2    erroneous application of the summary judgment standard. *Id.* at 5. The Court agrees.

3        It would be anomalous, at least, if a state medical provider could obtain summary

4    judgment based on her own opinion that her care was constitutionally permitted. This

5    Court will not so hold. The Court agrees with Reed that the "competing medical

6    opinions" present a question of fact for the jury, precluding summary judgment on this

7    basis. Defendants' claim they are entitled to summary judgment based on their own

8    testimony that their care was reasonable is not persuasive, and their motion on this basis

9    is DENIED.

10       Reed also argues that the R&R erroneously agreed with Defendants' assertion that

11   it was "undisputed" that Smith (then the Stafford Creek doctor) did not herself act with

12   deliberate indifference. Dkt. 188 at 7 (citing Dkt. 180 at 29). As Reed argues—and as this

13   Court has previously ruled, *see* Dkt. 90 at 3–5—there is evidence from which a jury

14   could reasonably conclude that Reed had, and complained of, multiple extrahepatic

15   symptoms. Defendants argue that Reed cannot prevail unless he can prove that the

16   doctors were subjectively aware that his disease was rapidly progressing, and the R&R

17   agreed. But Reed's claim is based on the Defendants' refusal to investigate his

18   symptoms, which can amount to deliberate indifference. Dkt. 188 at 8–9 (citing *Estate of*

19   *Silva v. City of San Diego*, No. 3:18-cv-2282-L-MSB, 2020 WL 6946011, at *17 (S.D.

20   Cal. Nov. 25, 2020) (failure to investigate can constitute deliberate indifference)).

21   Deliberate indifference does not require a showing of "acts or omissions . . . with

22   knowledge that harm will result." *Farmer*, 511 U.S. at 835. A plaintiff must show that the

1   defendants knew of and disregarded a substantial risk of serious harm, not that harm was

2   actually occurring, and that defendants were actually aware of it. *See id.* at 847.

3       Defendants' reading of the rule would permit prison doctors to prevail as a matter

4   of law based on their willful ignorance of the prisoner's medical condition and needs.

5   Reed has demonstrated that Eschbach, Smith, and the CRC (which included Hammond

6   and Strick) knew he was complaining of "fatigue, cough, shortness of breath,

7   palpitations, nausea, muscle/joint pain, easy bruising, and anxiety," Dkt. 188 at 8 (citing

8   Dkt. 42-1 at 62–63). The R&R also noted there was evidence that Reed had, in October

9   2015, reported symptoms including "Fatigue, Visual Changes, Cough, Shortness of

10  Breath, Palpitations, Hemorrhoids with Bright Red Blood Per Rectum, Constipation,

11  Nausea, Muscle/Joints Aches, Easy Bruising, and Anxiety." Dkt. 180 at 14 (citing, *inter*

12  *alia*, Dkt. 42-1 at 63).

13      Strick noted that Reed had "prediabetes," which can be an extrahepatic

14  manifestation. Defendants also knew he had liver disease with a METAVIR score of F2,

15  a clear source of the multiple symptoms, requiring further investigation. Eschbach was

16  not entirely aware of what extrahepatic symptoms were and testified that she could

17  "Google" such symptoms. *See* Dkt. 162 at 17 (citing Eschbach Deposition, Dkt. 164-3 at

18  63–66). Reed further asserts that Defendants' expert, Zawitz, conceded in his deposition

19

20

21

22

1    that Reed's fatigue was "more likely than not associated with his HCV." Dkt. 188 at 7

2    (parenthetically quoting Dkt. 177-5 at 29).[7]

3            Reed argues that he need not demonstrate that Defendants "actually knew" that his

4    symptoms were progressing rapidly; the issue instead was (and is) whether Defendants

5    were conscious of an "excessive risk" to Reed's health and were "subjectively aware of

6    his serious medical need." Dkt. 162 at 8 (citing, *inter alia*, *Farmer*, 511 U.S. at 835;

7    *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013)). Reed

8    argues that a jury could find that Defendants' failure to investigate further amounts to

9    deliberate indifference, even in the absence of subjective knowledge that his disease was

10   rapidly progressing. The Court agrees and will not adopt the R&R's recommended

11   dismissal of Reed's claims on this basis. Defendants' Third Motion for Summary

12   Judgment on this basis is DENIED.

13           Reed also argues that the R&R improperly conflated traditional vicarious liability

14   concepts—which do not apply in § 1983 actions—with supervisor liability under § 1983,

15   which is a plausible claim. Defendants' "lack of personal participation" defense relies on

16   their own testimony that they were not personally involved in or responsible for any

17   unconstitutional conduct. Each defendant testifies that he or she was not responsible for

18   Reed's care; they seem to suggest that non-party Nurse Eschbach was responsible,

19   instead. Reed points out that the R&R's acceptance of this position both views the

20

21           [7] Based on the Court's review of Zawitz's deposition transcript filed, Dkt. 177-5, the
     Court is unable to find this direct quote. Though, based on a review of the transcript, Zawitz did
22   concede that fatigue is associated generally with HCV. *See, e.g.*, Dkt. 177-5 at 69:11–16.

1    evidence and its reasonable inferences in the light most favorable to the Defendants and

2    misapplies the rule that there is no § 1983 vicarious liability for constitutional claims. He

3    argues that the Defendant doctors cannot escape liability by claiming that they had no

4    personal role in the denial of the care he claims was required.

5         To establish that a defendant is liable for a claim under 42 U.S.C. § 1983, a

6    plaintiff must show "(1) that the conduct complained of was committed by a person

7    acting under color of state law; and (2) that the conduct deprived the plaintiff of a

8    constitutional right." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

9    1988) (internal citation omitted). "Because vicarious liability is inapplicable to . . . § 1983

10   suits, a plaintiff must plead that each Government-official defendant, through the

11   official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556

12   U.S. 662, 676 (2009).

13        Supervisory liability is imposed against a supervisory official in his individual

14   capacity for his own culpable action or inaction in the training, supervision, or control of

15   his subordinates, for his acquiescence in the constitutional deprivations of which the

16   complaint is made, or for conduct that showed a reckless or callous indifference to the

17   rights of others. *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). A defendant can

18   only be liable for inadequate training if "the need for more or different training is

19   obvious, and the inadequacy so likely to result in violations of constitutional rights, that

20   the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the

21   need." *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092, 1099 (D. Mont. 2009) (quoting

22   *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (alteration in original)).

1    A supervisor may be liable under § 1983 if there exists either "(1) his or her

2    personal involvement in the constitutional deprivation, or (2) a sufficient causal

3    connection between the supervisor's wrongful conduct and the constitutional violation."

4    *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal quotation omitted). "The

5    requisite causal connection may be established when an official sets in motion a series of

6    acts by others which the actor knows or reasonably should know would cause others to

7    inflict constitutional harms." *Corales*, 567 F.3d at 570 (internal quotation omitted).

8       The R&R erroneously viewed the evidence in the light most favorable to

9    Defendants, and it conflated vicarious or *respondeat superior* liability with supervisor

10   liability under § 1983. *See* Dkt. 180 at 47–49. Viewed in the light most favorable to Reed,

11   the Defendant doctors are charged with supervising others, such as Nurse Eschbach, who

12   failed to recognize and investigate Reed's symptoms and his disease. The R&R's

13   rejection of this claim based on the inapplicability of vicarious liability or a lack of

14   personal participation does not address this standard, and the Court cannot adopt its

15   recommended resolution of Defendants' motion. Defendants' motion for summary

16   judgment on this basis is DENIED.

17      Defendants similarly argue that the CRC made the decision not to treat Reed in

18   January 2016 and that the individual doctors therefore did not personally participate in

19   that decision. The R&R agreed, and Reed objects, arguing that committee membership is

20   not an absolute shield from § 1983 liability. Dkt. 188 at 11–12. Hammond and Strick

21   were on the CRC, and they employed their specialized knowledge in the performance of

22   their duties on it. There is evidence they participated in that body's decision not to treat

1  Reed. As Reed points out, there is evidence that Hammond's was on the CRC because

2  the new medications had a "very substantial cost." *Id*. at 6; Dkt. 164-1 at 73:6–17. The

3  CRC is not a person that can be sued under § 1983.

4      Reed argues that if the R&R on this point is correct, then "medical providers at the

5  DOC can be completely immunized from Eighth Amendment liability under § 1983 (and,

6  for practical purposes, relieved of the Constitutional obligation to provide adequate

7  medical care) based on the structure of the bureaucracy they create." Dkt. 188 at 11.

8      The Court agrees, and therefore DECLINES to adopt the R&R's recommendation

9  that the Court grant Defendants' motion on this point, and Defendants' Third Motion for

10  Summary Judgment on this basis is DENIED.

11      Finally, Reed objects to the R&R's acceptance of Defendants' explanation for the

12  CRC's conclusion that Reed "will likely die of an alternate process." Dkt. 180 at 36–37.

13  The Court agrees that this statement is susceptible to different interpretations, but on

14  summary judgment it must view the evidence in the light most favorable to the non-

15  moving party. Thus, while Dr. Hammond's "benign" explanation of this statement, *see*

16  *id.* at 36, may ultimately be persuasive, it is not a factual basis for summary judgment.

17  This Court previously held that a reasonable jury could conclude that such an explicit

18  statement, combined with other facts, could establish deliberate indifferent to Reed's

19  serious medical needs, *see id.* at 37, and that conclusion remains true for purposes of

20  summary judgment, notwithstanding Hammond's explanation.

21      In short, the Court agrees that the R&R generally viewed the evidence in the light

22  most favorable to Defendants, rejected Reed's evidence, and drew inferences in

Defendants' favor, not his. It does not agree that, viewed in the light most favorable to the non-moving Plaintiff, the evidence properly in the record could not lead a jury to find that Defendants were deliberately indifferent to Reed's serious medical needs and that Defendants personally participated in the decision not to treat him. Their "difference of opinion" argument presents a question of fact, as do their arguments about Reed's symptoms and what they meant.

The Court DECLINES to adopt the R&R's recommended summary dismissal of Reed's Eighth Amendment claim, and Defendants' Third Summary Judgment Motion on each of these bases is DENIED.

**D.      Defendants are not entitled to qualified immunity.**

Defendants' motion argues that they are entitled to qualified immunity. Dkt. 160 at 8 and 17. As Reed accurately points out, they do not substantively address the "second prong" of the qualified immunity test: whether a reasonable official would have known that their conduct violated a *clearly established* constitutional right. Instead, in a relatively short section of their motion, they mostly repeat the argument that they did not violate Reed's rights as a matter of law, so it cannot have been clearly established that their conduct was unconstitutional. *Id*. at 16–17.

Because the R&R determined that the Defendants did not violate Reed's Eighth Amendment rights as a matter of law, it did not reach the second prong of the Defendants' qualified immunity defense—whether it would have been clear to a reasonable official that the conduct violated the constitution. Dkt. 180 at 50. The Court above has declined to adopt the Magistrate Judge's recommendation on that point and

1  determined that, properly viewed in the light most favorable to Reed, the evidence

2  supports a finding that the Defendants violated his constitutional rights. This leaves for

3  further inquiry and analysis the Defendants' claim that they are qualifiedly immune

4  because the right was not clearly established. The Court notes that this issue has been

5  previously argued, and the Court has previously denied Defendants' qualified immunity

6  claim in prior Orders.

7      Under the qualified immunity doctrine, "government officials performing

8  discretionary functions generally are shielded from liability for civil damages insofar as

9  their conduct does not violate clearly established statutory or constitutional rights of

10  which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

11  (1982).

12      A two-part test resolves claims of qualified immunity by determining whether

13  plaintiffs have shown facts that "make out a violation of a constitutional right," and if so,

14  whether the "right at issue was 'clearly established' at the time of defendant's alleged

15  misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citation omitted).

16  *Pearson* reversed *Saucier v. Katz*, 533 U.S. 194 (2001), and permits the Court to address

17  the parts in either order. 555 U.S. at 236. If there was not constitutional violation, at all,

18  qualified immunity is not at issue; there is no constitutional claim from which the

19  defendant is immune. And, where a defendant's entitlement to qualified immunity

20  depends on "disputed issues of material fact that need to be resolved by a jury," a district

21  court should deny summary judgment. *Thomas v. Gomez*, 143 F.3d 1246, 1249 (9th Cir.

22  1998).

1    Even if a defendant's decision is constitutionally deficient, qualified immunity

2    shields him from suit if his misapprehension about the law applicable to the

3    circumstances was objectively reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198

4    (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all

5    but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal

6    quotation omitted).

7    Defendants' motion does not argue that the constitutional depravation was not

8    clearly established; it argues there was no depravation at all. As discussed above, the

9    deliberate indifference standard is clearly established: "[p]rison officials violate the

10   Eighth Amendment if they are 'deliberately indifferent to a prisoner's serious medical

11   needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle*, 429

12   U.S. at 104) (alterations in original omitted). Viewed in the light most favorable to Reed,

13   the evidence would support a jury's finding that Defendants were deliberately indifferent

14   to his serious medical needs. This is not a new or unique factual context, or a novel

15   constitutional claim.

16   Viewed in the light most favorable to Reed, the evidence would permit a jury to

17   find that the Defendants were deliberately indifferent to Reed's serious medical needs, in

18   violation of clearly established constitutional precedent. Defendants' Third Motion for

19   Summary Judgment on the issue of qualified immunity is DENIED.

20

21

22

1

**E.     The Court will not decline supplemental jurisdiction over Reed's state law**

2

**claims.**

3

This case was filed in 2016, and it has been vigorously litigated in this Court ever

since. Reed is an elderly, sick, and incarcerated man. His medical negligence claim

4

largely relies on the same evidence as his constitutional claim, it has been thoroughly

5

litigated and briefed, and its viability is squarely before this Court.

6

It would not be fair to the Reed, to the Defendants, or to the state court that would

7

face a brand-new lawsuit, burdened with the history reflected in this court's lengthy

8

docket, to decipher where this court left off and then start over from scratch on pleadings,

9

discovery, motion practice, and the like. It would instead be a waste of time and judicial

10

resources. Even if Reed's § 1983 claims were not viable, the Court would not exercise its

11

discretion to abandon this case at this late date. The Court therefore DECLINES to adopt

12

the Recommendation that the Court exercise its 28 U.S.C. § 1367(c) discretion to decline

13

supplemental jurisdiction over, and dismiss without prejudice, Reed's state law medical

14

malpractice claim. Instead, the Court will address Defendants' motion on this claim.

15

**F.     Defendants' summary judgment motion on Reed's medical malpractice claim**

16

**is denied.**

17

Reed also asserts a state law medical malpractice claim against the Defendant

18

doctors and argues that their summary judgment motion should be denied. While

19

Defendants argue repeatedly in response to Reed's Eighth Amendment claim that "mere

20

negligence" does not amount to a constitutional violation, they also argue that

21

Defendants' medical negligence claim fails as a matter of law. Dkt. 160 at 19–23.

22

1       The Court has already rejected the argument that Reed's claim is procedurally

2   barred, Dkt. 147, and the evidentiary support for a jury's finding that the Defendant

3   doctors' medical care caused Reed harm is discussed above.

4       This leaves Defendants' argument that they are entitled qualified immunity from

5   Reed's negligence claim under state law. Defendants argue first that the Court already

6   determined that the HCV protocol was not unconstitutional, in part because it included an

7   exception for treatment where the patient exhibits extrahepatic symptoms that warrant

8   treatment. Accordingly, the Court agreed that Defendants were entitled to qualified

9   immunity for enacting that policy. *See* Dkt. 90 at 2. Defendants argue that that

10  determination necessarily implies that Defendants are entitled to qualified immunity on

11  Reed's claim that they violated his rights by prioritizing treatment for sicker patients, and

12  that that determination is the law of the case. Dkt. 189 at 4.

13      The negligence claim at issue is not based on the protocol's unconstitutionality; it

14  is based on the care Reed received. The claim that the Court's prior ruling necessarily

15  applies to Defendants' conduct in treating Reed in what they claim is a manner consistent

16  with that policy, is rejected, and the motion for summary judgment on that basis is

17  DENIED.

18      Defendants also argue that they are immune from Reed's negligence claim under

19  Washington common law, which applies when an officer "(1) carries out a statutory duty,

20  (2) according to procedures dictated to him by statute and superiors, and (3) acts

21  reasonably." *Gallegos v. Freeman*, 172 Wn. App. 616, 641–42 (quoting *McKinney v. City*

22  *of Tukwila*, 103 Wn. App. 391, 407 (2000)). Defendants' motion relies on their claim that

1    they followed the protocol and acted reasonably, as a matter law. As did their motion on

2    Reed's constitutional claim, Defendants' motion on Reed's negligence claims relies on

3    the testimony of their expert, Dr. Zawitz, that it was not possible to know "if and when"

4    Reed's disease progressed from F2 to F4. Dkt. 160 at 23 (citing Dkt. 156-1 at 28).

5        Reed responds that the state law immunity Defendants claim applies to police

6    officers and foster care case management workers, not to doctors employed by a state

7    prison. Dkt. 162 at 20–21 (citing *Babcock v. State*, 116 Wn.2d 596, 598 (1991) (creating

8    a "new" immunity for case management workers)). Reed argues, persuasively, that no

9    Washington Court has held that this immunity applies to medical providers. He also

10   argues, again persuasively, that even if that three-part test could lead to immunity under

11   Washington law, there are questions of fact about whether Defendants followed the

12   protocol and the "reasonableness" of their conduct in the complex factual circumstances

13   of this case is plainly a question of fact.

14       The Court agrees. Defendants have not cited authority supporting their contention

15   that Washington's qualified immunity for officers applies to medical providers in this

16   context. Absent such immunity, Defendants have effectively conceded that there is a

17   question of fact about whether their treatment met the applicable standard of care. In any

18   event, Reed has established that there is at least a question of fact on this issue.

19       Defendants' Motion for Summary Judgment on Reed's state law medical

20   malpractice claim is DENIED.

21

22

# III.  ORDER

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

Magistrate Judge Christel's Report and Recommendation, Dkt. 180, is ADOPTED as to the Defendants' summary judgment motion on their claim that Plaintiff Reed failed to exhaust his administrative remedies, and their motion on that basis is DENIED. The Court also ADOPTS the recommended dismissal of Reed's claims against Defendant Robert Weber, and those claims are DISMISSED with prejudice.

The Court DECLINES to adopt the R&R's recommended resolution of Defendants' summary judgment motion on Reed's Eighth Amendment claim, as to both the conclusion that, viewed in the light most favorable to Reed, the evidence would not permit a jury to find that Defendants violated Reed's constitutional rights as a matter of law, and the resulting conclusion that the Court need not address whether the violation was clearly established, thus entitling Defendants to qualified immunity even if they violated Reed's constitutional rights. The Defendants have not demonstrated that, as a matter of law, they are entitled to qualified immunity, and their summary judgment motion on that basis is DENIED.

The Court also DECLINES the recommendation to decline supplemental jurisdiction over, and to dismiss without prejudice, Reed's state law medical malpractice claim. Defendants are not entitled to state law qualified immunity on that claim, and, viewed in the light most favorable to Reed, the evidence would support a jury verdict in his favor on this claim.

Defendants' Third Motion for Summary Judgment, Dkt. 160, is therefore DENIED. The referral to Judge Christel is TERMINATED. Defendants have the right to immediately appeal the denial of their motion on qualified immunity. If they appeal, the Court will stay the case pending the outcome of that appeal.

If Defendants do not so appeal, the parties shall file a joint status report identifying any other matters the parties and the Court should address before trial and propose a schedule for doing so. The JSR should also address potential trial dates. It should be filed within seven days of the expiration of the appeal period. The Clerk will then issue a scheduling order based on the JSR.

Dated this 31st day of March, 2022.

BENJAMIN H. SETTLE
United States District Judge